UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Lajoel Theodore Rouse, | ) | C/A No.: 6:05-cr-01173-GRA-1 |
| | ) | C/A No.: 6:08-cv-70062-GRA |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | (Written Opinion) |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter comes before the Court on the petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed on May 19, 2008. In accordance with Rule 4 of the Rules Governing §2255 Proceedings, the Court has conducted a preliminary review of the motion. Because it is clear from the record that petitioner is not entitled to relief on the bases asserted in his motion, the Court finds that summary dismissal is appropriate.

**Background**

On March 1, 2006, the petitioner pled guilty to one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d). Prior to sentencing or the completion of the petitioner's pre-sentence report (PSR), on May 12, 2006, the petitioner's attorney, Larry Crane, filed a motion to withdraw as counsel due to "irreconcilable differences." (Docket Entry No.: 42) The court denied Mr. Crane's motion and Mr. Crane subsequently represented the petitioner at sentencing. On July 25, 2006, this court sentenced the petitioner to 188 months. His conviction and

sentence were upheld by the Fourth Circuit on April 23, 2007. Petitioner did not file a writ of certiorari.

## Discussion

Petitioner brings this claim *pro se.* This Court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

A § 2255 action is the appropriate mechanism for "a prisoner in custody[,] under sentence of a court established by [an] Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution[,] . . . to vacate, set aside[,] or correct the sentence." 28 U.S.C. § 2255. The petitioner alleges that his Sixth Amendment rights were violated because he was denied the effective assistance of counsel.

"[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). The purpose of this requirement is to ensure each criminal defendant receives a fair trial. *Strickland*, 466 U.S. at 686. A petitioner must show two things to evince ineffective assistance of counsel: (1) attorney error—that the attorney's representation fell below an objective standard of reasonableness; and

(2) prejudice—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner claims that his counsel was constitutionally deficient in four different ways. The court will deal with each contention separately.

### 1.  *Conflict of Interest*

Petitioner argues that: "The Court's refusal to replace counsel compelled Petitioner to undergo critical stages of the judicial process with the assistance of an attorney with whom he became embroiled in irreconcilable conflict, thus, depriving him of the effective assistance of counsel[.]"  (Pet. at 8)  "[I]f the [petitioner] demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance[,]" then a district court should find that the petitioner's Sixth Amendment rights have been violated.  *Id.* at 692. Even if the petitioner's counsel had an actual conflict of interest, the petitioner has failed to demonstrate that the conflict adversely affected his lawyer's performance.

This court denied Mr. Crane's motion to withdraw as counsel for the petitioner prior to sentencing but after Petitioner's guilty plea.  Therefore, if the alleged "conflict" adversely affected Mr. Crane's advocacy, it could only have done so at sentencing. At sentencing, Mr. Crane argued at length that the court should depart from the guidelines given the specific circumstances surrounding the petitioner's crime.  (Sent. Tr. at 3-9) Throughout his argument, Mr. Crane referred to specific parts of the PSR and demonstrated intimate knowledge with the facts of the petitioner's crime, criminal

history, and family history. (*Id.*) Mr. Crane then instructed the court that the petitioner wanted to speak with the court. Petitioner then explained to the court his version of his crime. (*Id.* at 10-13) Tellingly, Mr. Crane's version and the petitioner's version of the facts were identical. Whatever irreconcilable differences lead Mr. Crane to move to withdraw did not keep him from arguing the case that his client wanted to argue. Though it was not ultimately successful, there is no evidence that Mr. Crane's advocacy was affected by his prior desire to withdraw from the case. Therefore, even if Mr. Crane's representation at sentencing was conflicted, Petitioner suffered no prejudice.

### 2. *The Nature of Supervised Release*

Petitioner next argues that Mr. Crane was unconstitutionally ineffective for choosing not to object to the court's supervised release colloquy that failed to describe the nature of supervised release. Though it is error for a court to fail to explain the significance of supervised release, that error is harmless "if the combined sentence of incarceration and supervised release actually received by the defendant is less than the maximum term he was told he could receive." *United States v. Good*, 25 F.3d 218, 220 (4th Cir. 1994). Here, any error was harmless; therefore, even if it was unreasonable for Mr. Crane to fail to object to this error, Petitioner suffered no prejudice.

At the Rule 11 hearing, the court informed the petitioner that:

> THE COURT: And the penalty by statute is imprisonment for up to 25 years, a fine of up to $250,000, special

> assessment of a hundred dollars, and supervised release for three years. Now, what that supervised release means, I'm sure Mr. Crane has explained it to you or will before sentencing, is that even after you complete your term of sentence you can serve up to three years of supervised release.

(Plea Trans. at 4)  Later in the hearing, the prosecutor informed the court that the maximum term of supervised release was actually five years.  (*Id.* at 12) The court informed the petitioner correctly by stating: "It's five years after you complete your sentence you would be subjected to." (*Id.*)  Therefore, the court told the petitioner that he could be sentenced to a combined sentence of incarceration and supervised release of 360 months—300 months of incarceration and 60 months of supervised release.  The petitioner was actually sentenced to a combined sentence of incarceration and supervised release of 248 months—188 months of incarceration and 60 months of supervised release. Under *Good*, the court's failure to describe the nature of supervised release was harmless error.  Therefore, Petitioner did not suffer any prejudice from his attorney's decision not to object on these grounds.

### 3.    §§ *5K2.12 & 5K2.13 Departure*s

Petitioner argues that his attorney erred by choosing not to argue for downward departures pursuant to United States Sentencing Guidelines §§ 5K2.12 and 5K2.13. Even if his attorney erred by failing to make these arguments, Petitioner's claim does not demonstrate the requisite prejudice.

Section 5K2.12 provides in relevant part:

> If the defendant committed the offense because of

> serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. . . . Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

Here, the petitioner's alleged coercion stemmed directly from his inability to pay for the drugs his wife and he consumed. Petitioner's coercion stemmed from personal financial difficulties, circumstances that this policy statement expressly note do not warrant a downward departure. *See United States v. Barber*, 119 F.3d 276, 280 (4th Cir. 1997) (describing departure based on personal financial difficulties as "never permissible"). Because the petitioner's alleged coercion falls outside the plain language of § 5K2.12, he suffered no prejudice from his attorney's choice to forgo this argument.

Likewise, the plain language of § 5K2.13 demonstrates that Petitioner suffered no prejudice from his attorney's decision to abstain from arguing for a departure pursuant to that section. Section 5K2.13 provides in relevant part:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. . . .
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs

> or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

Petitioner argues that his mental capacity was "disengaged due to the threat from two armed drug dealers to harm him and his family." (Pet. at 14) Even if the petitioner has successfully argued that this constitutes a significantly reduced mental capacity, Petitioner arguably falls within the plain language of three of the four exceptions to this departure.

First, Petitioner admits using drugs in the days before robbing the bank. (Pet. at 2) Second, Petitioner's crime involved a firearm, a circumstance that demonstrates a serious threat of violence. (PSR at ¶ 5) Finally, Petitioner has a lengthy criminal history. (*Id.* at ¶¶ 14-18) Each of these facts preclude a court from departing from the guideline range pursuant to § 5K1.13. Therefore, he suffered no prejudice by his attorney's decision to abstain from arguing for a departure based on § 5K1.13.

    4.   *Documentary Evidence for Armed Career Criminal Enhancement*

Lastly, Petitioner argues that his attorney failed to adequately investigate his criminal history and subsequently object that, pursuant to *Shephard v. United States*, 544 U.S. 13 (2005), the government failed to satisfy its burden to produce sufficient evidence of the predicate convictions the court relied upon to apply the Armed Career Criminal Act (ACCA) enhancement to his sentence. (Pet. at 17) Petitioner does not

argue that his prior convictions do not constitute predicate offenses for purposes of the ACCA enhancement, rather Petitioner argues that the government did not provide enough appropriate evidence of his prior convictions under *Shephard* to support the court's ACCA enhancement.

In *Shephard* the Supreme Court held that:

> We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a non-generic statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Shephard*, 544 U.S. at 26. In the Fourth Circuit, "[a] presentence report is a 'comparable judicial record' and a district court is entitled to rely upon it for a defendant's criminal history." *Tilson v. United States*, Civil No. 1:05-CV-367-1-T, 2007 WL 1456215, *2 n.3 (W.D.N.C. May 16, 2007); *see also United States v. Humphries,* 147 Fed.Appx. 361 (4th Cir. 2005).

Here, the court properly relied upon the PSR as evidence of the predicate crimes to apply the ACCA enhancement. Petitioner did not object to any of the facts in the PSR. Therefore, under *Shephard*, the court relied upon a "comparable judicial record" as evidence for purposes of the ACCA enhancement. Therefore, even if the petitioner's attorney erred by failing to investigate the petitioner's criminal history or to object to the evidence that the court relied upon in applying the ACCA enhancement, the petitioner has failed to demonstrate any prejudice from these alleged

errors.

## Conclusion

After a thorough review of the petition, the record, and relevant case law, it is clear that the petitioner is not entitled to relief on the bases asserted in his motion. Therefore, the court finds that summary dismissal is appropriate.

IT IS THEREFORE SO ORDERED THAT the petitioner's petition be DISMISSED.

IT IS SO ORDERED.

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

June 10, 2008
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Petitioner has the right to appeal this Order within sixty (60) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**